UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL V. CRAIG,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SILVER SAGE RANCH, LLC; RENEE E. BAKER f/k/a RENEE BUERMANN; JOSEPH R. BUERMANN; BURMA NAYLOR; and SILVERCREEK REALTY GROUP,<br><br>　　　　Defendants. | Case No. 1:22-cv-00115-AKB<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS BURMA NAYLOR AND SILVERCREEK REALTY GROUP, LLC'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)** |

Pending before the Court is Defendants Burma Naylor and Silvercreek Realty Group, LLC's Motion to Dismiss. (Dkt. 62). The Court heard oral argument on July 17, 2024. For the reasons discussed, the Court grants Defendants' motion.

## I. BACKGROUND

In 2018, Plaintiff Daniel Craig decided to sell his Wisconsin farm and move to Idaho to own and operate a cattle ranch. To find a ranch, Craig sought the assistance of an Idaho realtor, and in February 2019, he entered into an RE-14 Buyer Representation Agreement ("Representation Agreement") retaining Krista Deacon as the Broker of Defendant Silvercreek Realty Group, LLC, ("Silvercreek Realty"). (Dkt. 54 at pp. 50-52). Defendant Burma Naylor is a licensed real estate agent who was affiliated with Silvercreek Realty and signed the Representation Agreement on Silvercreek Realty's behalf. (*Id.* at p. 52). Thereafter, Naylor found a ranch located in Washington County, Idaho, known as the Midvale Ranch. Defendant Silver Sage Ranch, LLC, owned the

Midvale Ranch, and that entity's two members are Defendants Renee Baker and Joseph Buermann (collectively "the Buermanns").[1]

The Midvale Ranch was both an operating ranch and a residence where the Buermanns lived. After visiting the Midvale Ranch, Craig decided to make an offer to purchase it. In May 2019, Craig and the Buermanns entered into a purchase and sale agreement ("Purchase Agreement") for the Midvale Ranch whereby Craig agreed to purchase the property for $3.3 million. (*Id.* at pp. 32-40). Craig also agreed to pay $115,000 in earnest money to be credited to him at closing. The Purchase Agreement anticipated Craig obtaining financing in the amount of $1.8 million of the purchase price and personally funding the remaining balance through the sale of his Wisconsin farm.

The closing date was originally set for July 8, 2019. Given Craig's intent to purchase the Midvale Ranch, the Buermanns began looking for a new residence and located a property in Sweet, Idaho. The Buermanns entered into a purchase and sale agreement for the Sweet property and coordinated the closing date for that purchase with the closing date on the Midvale Ranch. Craig, however, struggled to finance his purchase of the Midvale Ranch. In May 2019, the Buermanns agreed to extend the closing date until August. As part of that agreement, $25,000 of Craig's earnest money was released to the Buermanns as nonrefundable, and the Buermanns extended the closing date for the Sweet property.

---

[1] Defendants Silver Sage, Baker, and Buermann have moved for summary judgment, and the Court addresses that motion in a separate memorandum decision and order.

Then, in July 2019, Naylor told Craig another buyer was interested in the Midvale Ranch. (*Id.* at ¶ 29). Naylor "asked Craig how much more earnest money he could pay to keep the deal alive given the interest of the other rancher." (*Id.*). Craig told Naylor "he could probably manage to deposit as much as $800,000 in earnest money." (*Id.*). Relatedly, "Craig understood that $800,000 was the amount [the Buermanns] needed to buy" the Sweet property. (*Id.*).

Thereafter, the parties entered into Addendum No. 4 to the Purchase Agreement, which extended the closing date until October 31, 2019, and provided additional earnest money in the amount of $682,000 would be released to the Buermanns to fund their purchase of the Sweet property. (*Id.* at ¶ 30). The parties designated this additional earnest money as nonrefundable, although it was to be applied to the purchase price of the Midvale Ranch at closing. (*Id.*). Craig then wired $682,000 to the title company, which was in addition to the $115,000 already in escrow. (*Id.*).

Ultimately, Craig was unable to obtain the financing necessary to purchase the Midvale Ranch. (*Id.* at ¶ 34). Naylor allowed the Purchase Agreement to expire and did not complete a form to release the earnest money. (*Id.* at ¶ 35). Craig asked Silvercreek Realty to return $90,000 held pursuant to the purchase agreement, and Naylor reported the money had been previously released. (*Id.* at ¶ 37). Following an audit, however, Silvercreek Realty later found the $90,000 and returned those funds to Craig in October 2020. (*Id.*). To date, Craig has not received repayment of the balance of the earnest money.

In March 2022, Craig filed a complaint against Silver Sage Ranch, Baker, and Buermann. Following the close of discovery, Craig filed a motion for leave to file an amended complaint. The

magistrate judge granted that motion, and Craig filed his amended complaint.[2] (*Id.*). In his amended complaint, Craig added Naylor and Silvercreek Realty as defendants. As against Naylor and Silvercreek Realty, Craig purported to allege claims for negligence, negligent supervision, and breach of contract. (*Id.* at ¶¶ 88-104). Naylor and Silvercreek Realty move to dismiss these claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. (Dkt. 62).

## II.  LEGAL STANDARD

Under Rule 12(b)(6), a motion to dismiss for failure to state a claim on which relief can be granted tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In assessing dismissal of claims under Rule 12(b)(6), the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Generally, a district court may not consider any materials beyond the complaint when ruling on a Rule 12(b)(6) motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). If the court considers evidence outside the pleadings, it must convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

---

[2]  Following Craig's amended complaint, this case was reassigned to the undersigned on March 25, 2024.

**MEMORANDUM DECISION AND ORDER RE MOTION TO DISMISS - 4**

### III. ANALYSIS

**A.     Economic Loss Rule**

Craig alleges that Naylor and Silvercreek Realty were negligent including by, among other things, breaching their duties and obligations to exercise reasonable skill and care and to promote Craig's best interests in violation of Idaho Code § 54-2087, the Idaho statute establishing the duties and obligations of a real estate agent and brokerage to its client. (Dkt. 54 at ¶ 88-90). Further, Craig alleges Silvercreek Realty negligently supervised Naylor in violation of I.C. § 54-2038.[3] (Dkt. 54 at ¶¶ 95-97). Assuming for purposes of analysis that Craig's complaint adequately alleges negligence and negligent supervision claims, Craig does not dispute the economic loss rule applies in this case to bar his recovery under his negligence claims absent an exception to that rule.

"The economic loss rule is a judicially created doctrine that applies in negligence cases." *Path to Health, LLP v. Long*, 383 P.3d 1220, 1226 (Idaho 2016). It prohibits recovery of purely economic losses in a negligence action because there is no duty to prevent economic loss to another. *Blahd v. Richard B. Smith, Inc.*, 108 P.3d 996, 1000 (Idaho 2005), *abrogated on other grounds recognized by BrunoBuilt, Inc. v. Briggs Eng'g, Inc.*, 525 P.3d 1122, 1128 n.5 (Idaho 2023). Generally, "economic losses" include losses related to the subject of the lawsuit or of the contract. *Id.*; *Aardema v. U.S. Dairy Sys., Inc.*, 215 P.3d 505, 511 n.2 (Idaho 2009) (noting case

---

[3]    Section 54-2038 establishes general responsibilities for "designated brokers," meaning "an *individual* who is licensed as a real estate broker in Idaho and who is designated by the brokerage company to be responsible for the supervision of the brokerage company and the activities of any associated licensees. I.C. § 54-2004(21) (emphasis added). In response to Defendants' motion to dismiss, Craig acknowledges Deacon, not Silvercreek Realty, is the designated broker and requests leave to amend to add her as a defendant. (Dkt. 70 at p. 11).

law "delineates a clear pattern that has implicitly defined the 'subject of the transaction' by the subject matter of the contract" and concluding "the *underlying contract* that is the subject of the lawsuit is the subject of the transaction"); *Blahd,* 108 P.3d at 1000-01 ("[The] cases indicate that word 'transaction,' for purposes of the economic loss rule, does not mean a business deal—it means the subject of the lawsuit. . . . It is the subject of the transaction that determines whether a loss is property damage or economic loss, not the status of the party being sued.").

The Idaho Supreme Court has recognized two exceptions to the economic loss rule; they include: (1) "where a special relationship exists between the parties," and (2) "where unique circumstances require a reallocation of the risk." *Aardema*, 215 P.3d at 512. To date, no Idaho appellate court has recognized a unique circumstance requiring a risk reallocation. *Blahd*, 108 P.3d at 1002 (noting existence of the unique circumstances exception to the economic loss rule has never been applied). The Idaho Supreme Court, however, has stated that "the purchase of a residential house is an everyday occurrence and does not create the type of unique circumstances required to justify a different allocation of risk." *Id.*

Regarding the special relationship exception to the economic loss rule, the Idaho Supreme Court has ruled that the exception "is an extremely narrow exception which applies in only limited circumstances." *Aardema*, 215 P.3d at 512. The Court has recognized two categories of special relationships for purposes of determining the application of the economic loss rule: (a) where a professional or quasi-professional performs personal services, and (b) where an entity holds itself out to the public as having expertise regarding a specialized function. Examples of professionals whose services may give rise to a special relationship include an attorney, an architect, an engineer,

**MEMORANDUM DECISION AND ORDER RE MOTION TO DISMISS - 6**

or a physician. *McAlvain v. Gen. Ins. Co. of Am.*, 554 P.2d 955, 958 (Idaho 1976); *see also Eliopulos v. Knox*, 848 P.2d 984, 992 (Idaho Ct. App. 1992) (noting same examples).

Whether Idaho law recognizes a special relationship between a buyer and his real estate agent, designated broker, or brokerage company is unclear. In *Path to Health*, the Idaho Supreme Court appears to have implicitly rejected such a relationship. In that case, Path engaged a real estate broker and a brokerage company to locate a property at which Path could operate its commercial business. 383 P.3d at 1222. The broker showed Path's representatives a potential property; Path's representatives specifically inquired about that property's zoning; and the broker represented "he had checked zoning and repeatedly assured [Path it] would be fine." *Id.* After purchasing the property, however, Path learned it was not zoned for commercial use. *Id.* at 1223. Subsequently, Path sued the broker and his brokerage company alleging, among other claims, negligence per se. *Id.* The district court dismissed that negligence claim, ruling the economic loss rule barred it. *Id.* at 1226. On appeal, the Idaho Supreme Court affirmed that ruling.

Although the Idaho Supreme Court in *Path to Health* did not specifically address the absence of a special relationship between Path and his real estate broker and brokerage company when applying the economic loss rule, the Court relied on the Idaho Court of Appeals' decision in *Graefe v. Vaughn*, 972 P.2d 317 (Idaho Ct. App. 1999). In *Graefe,* the court concluded a "special relationship" between the seller's real estate broker and the buyer did not exist. *Id.* at 319. The *Path to Health* Court concluded that "the Court of Appeals correctly decided *Graefe*." The *Path to Health* Court, however, did not acknowledge that the *Graefe* decision addressed a relationship between the *seller's* broker and the *buyer*—rather than between the buyer and the buyer's broker. Regardless, *Path to Health* appears to stand for the implicit conclusion that Path did not have a

**MEMORANDUM DECISION AND ORDER RE MOTION TO DISMISS - 7**

"special relationship" with his broker or the brokerage company for purposes of avoiding the economic loss rule.

Other Idaho case law, however, appears to contradict the implicit conclusion in *Path to Health* that a special relationship may not exist between a buyer and his realtor for purposes of avoiding the economic loss rule. For example, most recently, the Idaho Supreme Court in *Wallace v. Heath*, 479 P.3d 155 (Idaho 2021), stated in dicta that its decision in *Sumpter v. Holland Realty, Inc.*, 93 P.3d 680 (Idaho 2004) "does not necessarily foreclose the special relationship exception from applying to real estate agents as 'quasi-professionals.'" *Wallace*, 479 P.3d at 165 n.1. In *Sumpter*, the Court ruled that "real estate agents do not provide professional services" for purposes of Idaho's malpractice statute of limitations. 93 P.3d at 685. At the same time, however, the *Sumpter* Court ruled that a buyer's claims challenging a real estate agent's alleged violations of his duties under I.C. § 54-2087 "lies in tort." *Sumpter*, 93 P.3d at 685 (holding that "the cause of action brought by the Sumpters [alleging breaches of the duties articulated in I.C. § 54-2087] lies in tort, not in contract"). Construing these two rulings in *Sumpter* together—that a violation of a duty under § 54-2087 only gives rise to a tort claim and that a realtor is not a professional—the economic loss rule could conceivably bar any lawsuit for any alleged § 54-2087 violations, absent a conclusion that a realtor is a quasi-professional who is excepted from the economic loss rule. Perhaps to preclude a complete bar to any tort action for violations of § 54-2087, the Idaho Supreme Court indicated its willingness to consider whether a real estate agent or related entities may be quasi-professionals. *Wallace*, 479 P.3d at 164 n.1 (stating specifical relationship exception to economic loss is not foreclosed as to real estate agents who may be quasi-professionals); *cf.*

**MEMORANDUM DECISION AND ORDER RE MOTION TO DISMISS - 8**

*Blahd*, 108 P.3d at 1001 (stating real estate developers "may arguably be considered quasi-professionals").

Additionally, as Craig notes, the Idaho Supreme Court's decision in *McAlvain*, 554 P.2d 955, lends support to a conclusion that real estate agents may be quasi-professionals under the special relationship exception to the economic loss rule. In that case, McAlvain purchased an ongoing business with $45,000 in inventory; the existing insurance policy only covered $30,0000 in inventory; and McAlvain requested his insurance agent provide sufficient insurance to fully cover his inventory. *Id.* at 956. Subsequently, McAlvain became aware his inventory was underinsured and told his agent the coverage for his inventory was "grossly inadequate." *Id.* at 957. Thereafter, a fire destroyed McAlvain's inventory, which remained underinsured despite his prior requests for increased coverage. *Id.* At trial, a jury found the insurance company was negligent in failing to provide sufficient coverage, and the insurance company appealed, arguing its breach of contract did not give rise to tort liability. *Id.*

On appeal in *McAlvain*, the Idaho Supreme Court addressed whether the insurance company could be liable for negligence when McAlvain had requested the company provide complete coverage; the company knew or should have known the amount of insurance necessary for complete coverage; but it failed to provide complete coverage. *Id.* at 958. After noting the statutory requirements and qualifications for an insurance agent under Idaho law, the Court concluded that "a person in the business of selling insurance holds himself out to the public as being experienced and knowledgeable in this complicated and specialized field" and that "an insured will look to his insurance agent, relying, not unreasonably, on his expertise in placing insurance problems in his agent's hands." *Id.* Based on these conclusions, the Court ruled that an

**MEMORANDUM DECISION AND ORDER RE MOTION TO DISMISS - 9**

insurance agent may be liable for his negligent conduct which injures his insured "just as would an attorney, architect, engineer, physician or any other professional who negligently performs personal services." *Id.*

Based on the Idaho Supreme Court's recent statement in *Wallace*, that Court at least appears willing to consider whether a realtor is a quasi-professional under the special relationship exception to the economic loss rule despite its decision in *Path to Health*. Regardless, Craig's complaint fails to specifically allege Naylor and Silvercreek Realty are quasi-professionals with whom he had a special relationship. Additionally, Craig does not clearly allege any specific reliance on either Naylor and Silvercreek's representations or expertise. At least inferentially, a plaintiff's reliance on the defendant's expertise appears to be a component of the existence of a special relationship. For example, in *McAlvain*, the Court ruled an insurance agent was a quasi-professional having a special relationship with the insured based—at least in part—on the insured's reliance on his insurance agent's special expertise. 554 P.2d at 780 ("Ordinarily, an insured will look to his insurance agent, relying, not unreasonably, on his expertise in placing his insurance problems in the agent's hands."). Similarly, the Court in *Blahd* rejected the plaintiffs' argument that they had a special relationship with real estate developers absent evidence of reliance. 108 P.3d at 1001-02 (noting no indication of reliance on representations or inducement of reliance). Finally, in *Duffin v. Idaho Crop Imp. Ass'n*, 895 P.2d 1195, 1201 (Idaho 1995), *abrogated on other grounds by Davis v. Blast Properties, Inc.*, 551 P.3d 706, 710-11 (Idaho 2024), the Court concluded a certifier of potato seed had a special relationship with a purchaser of certified seed where the certifier "held itself out as having expertise in the performance of a specialized function" and "knowingly induced" the purchaser's reliance.

**MEMORANDUM DECISION AND ORDER RE MOTION TO DISMISS - 10**

Based on the status of Idaho law, whether this Court should consider recognizing a special relationship between the parties in this case remains an open question. *See* Idaho Appellate Rule 12.3 (providing U.S. District Court or party may certify question of law for declaratory decree adjudicating controlling question of law without controlling Idaho precedent). That question, however, cannot be addressed absent allegations more clearly articulating the nature of Craig's alleged special relationship with Naylor, Silvercreek Realty, and perhaps Silvercreek Realty's designated broker; their special skill and expertise; their knowing inducement of Craig to rely on that expertise; and Craig's actual reliance. For that reason, the Court grants Naylor and Silvercreek Realty's motion to dismiss Craig's negligence claims but will permit him to amend his complaint.

**B.     Breach of Contract**

Defendants also argue Craig has failed to state a claim for breach of contract. (Dkt. 62-1 at p. 15). To state a claim for breach of contract, a plaintiff must allege: "(a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages." *Mosell Equities, LLC v. Berryhill & Co.*, 297 P.3d 232, 241 (Idaho 2013).

In support of his breach of contract claim, Craig cites to the Representation Agreement. (Dkt. 54 at ¶ 100, p. 50 (citing Exhibit F). This Representation Agreement states Craig "retains" Krista Deacon, who is the broker of Silvercreek Realty, and is signed by Naylor "on behalf of Brokerage." (*Id.* at pp. 50, 52). Craig alleges that under this agreement, Defendants "agreed that they were qualified" to advise him "on general matters concerning real estate." (*Id.* at ¶ 101). Further, he generally alleges that "by engaging in the conduct alleged in the Amended Complaint, [Defendants] breached [the Representation Agreement] and otherwise violated the duty of good faith and fair dealing." (*Id.* at ¶ 102).

Defendants challenge Craig's breach of contract claim in two respects. First, they argue Craig failed to allege a contract between him and Naylor in her individual capacity. (Dkt. 62-1 at p. 15). In response, Craig concedes Naylor is not a part to the Representation Agreement in her individual capacity and requests leave to amend his complaint to add Deacon as a party. (Dkt. 70 at p. 14 n.7).

Second, Defendants argue that Craig fails to identify any provision of the Representation Agreement that they breached and that his conclusory allegations are insufficient to state a claim for relief. (Dkt. 62-1 at pp. 15-16). In response, Craig points to his allegation that Defendants "agreed" they were "qualified." (Dkt. 70 at p. 14). As Defendants note, however, the statement in the Representation Agreement on which Craig relies in the limited; it provides in part that "Broker is qualified to advise [Craig] on general matters concerning real estate but may not offer legal advice and is not an expert in matters of law, tax, financing. . . ." (Dkt. 54 at p. 50, ¶ 4). Craig fails to allege what qualifications Defendants purportedly agreed to possess but which they lacked or misrepresented. Accordingly, the Court agrees with Defendants that Craig's breach of contract allegations are too conclusory to state a claim for relief.

Contrary to Craig's assertion, his general reference to other conduct alleged in his amended complaint is inadequate to save his breach of contract claim. (*See* Dkt 54 at ¶ 102 (referring generally to "engaging in conduct alleged in this Amended Complaint); Dkt. 70 at p. 15 (referring to "[m]any other paragraphs detailing Defendants' failure" but declining to "repeat those allegations" in opposition to motion to dismiss). Although Craig alleges many failures by Defendants, most if not all of those failures appear to allege Defendants did not comply with their statutory duties under § 54-2087. The Idaho Supreme Court in *Sumpter*, 93 P.3d at 685, however,

has ruled that such failures sound in tort, not contract. As a result, Craig cannot allege a breach of contract claim based on those alleged failures.

Further, Craig's general reliance on the implied covenant of good faith and fair dealing is inadequate to save his breach of contract claim. In Idaho, the covenant of good faith and fair dealing is an implied term in every contract. *Idaho First. Nat'l Bank v. Bliss Valley Foods,* 121 Idaho 266, 288 (1991). A violation of the covenant occurs when one party to the contract "violates, nullifies, or significantly impairs any benefit of the contract." *Id.* While the covenant requires that "the parties perform in good faith the obligations imposed by their agreement," it cannot impose upon the contracting parties' obligations that are inconsistent with the express terms of their agreement. *Id.* Nor does it impose an "amorphous concept of bad faith as the standard for determining whether the covenant has been breached." *Id.* at 628. Here, Craig fails to identify any particular benefit Defendants allegedly violated, nullified, or significantly impaired. For these reasons, the Court grants Defendants' motion to dismiss Craig's breach of contract claim, although it will permit him to amend his complaint to cure his pleading defects if possible.

## IV.  ORDER

**IT IS ORDERED that:**

1. Defendants Burma Naylor and Silvercreek Realty Group, LLC's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (Dkt. 62) is **GRANTED**.

    2.       Plaintiff Daniel Craig, however, is **GRANTED** leave to file an amended complaint, as detailed above. Any amended complaint must be filed **within thirty (30) days** of the issuance of this order.

DATED: August 21, 2024

*Amanda K. Brailsford*
Amanda K. Brailsford
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER RE MOTION TO DISMISS - 14**