UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL V. CRAIG,<br><br>        Plaintiff,<br><br>        v.<br><br>SILVER SAGE RANCH, LLC; RENEE E.<br>BAKER f/k/a RENEE BUERMANN;<br>JOSEPH R. BUERMANN; BURMA<br>NAYLOR; KRISTA DEACON and<br>SILVERCREEK REALTY GROUP,<br><br>        Defendants. | Case No. 1:22-cv-00115-AKB<br><br>**MEMORANDUM DECISION AND<br>ORDER RE DEFENDANTS NAYLOR,<br>DEACON, AND SILVERCREEK<br>REALTY GROUP'S MOTION TO<br>DISMISS SECOND AMENDED<br>COMPLAINT** |

Pending before the Court is Defendants Burma Naylor, Krista Deacon, and Silvercreek

Realty Group, LLC's Second Motion to Dismiss (Dkt. 91). Having reviewed the record and the

parties' submissions, the Court finds that the facts and legal argument are adequately presented

and that oral argument would not significantly aid its decision-making process, and it decides the

motions on the parties' briefing.[1] Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ.

P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on

---

[1]    Although the Court previously scheduled a hearing on this motion, that hearing has been repeatedly continued for various reasons. After review of the parties' submissions, the Court concludes a hearing is not necessary; vacates the hearing scheduled for July 30, 2025, at 9:30 a.m.; and issues this decision to afford the parties a speedy and less expensive determination. *See* Fed. R. Civ. P. 1 (providing court should construe rules to secure just, speedy, and inexpensive determination of proceeding).

briefs, without oral hearings."). For the reasons discussed below, the Court grants Defendants'

motion.

## I. BACKGROUND

In 2018, Plaintiff Daniel V. Craig decided to sell his Wisconsin farm and move to Idaho to

own and operate a cattle ranch (Dkt. 85 at ¶ 1). To find a ranch, Craig sought the assistance of an

Idaho realtor, and in February 2019, he entered into a RE-14 Buyer Representation Agreement

(Representation Agreement) retaining Krista Deacon, who is the designated broker of Defendant

Silvercreek Realty Group, LLC (Silvercreek Realty), and Defendant Burma Naylor, a licensed real

estate agent affiliated with Silvercreek Realty (*id.* at ¶ 16). In March 2019, Naylor found a potential

ranch for sale located in Washington County, Idaho, known as the Midvale Ranch. Defendant

Silver Sage Ranch, LLC (Silver Sage Ranch) owned the Midvale Ranch, and Silver Sage Ranch's

members are Defendants Renee Baker and Joseph Buermann (collectively the Buermanns).[2]

After visiting the Midvale Ranch, Craig decided to make an offer to purchase it (*id.* at

¶ 19). In May 2019, Craig and the Buermanns entered into a RE-21 Real Estate Purchase and Sale

Agreement (Purchase Agreement) (*id.* at ¶ 19; *see also id.* at Ex. A). The Buermanns' licensed real

estate agent, Dave Anderson, was an agent affiliated with Silvercreek Realty, like Naylor. Because

both real estate agents were affiliated with Silvercreek Realty and it represented both the buyer

---

[2]     Originally, Craig only sued Silver Sage Ranch and the Buermanns. After conducting
discovery, those defendants moved for summary judgment, which the Court granted in part and
denied in part (Dkt. 83). Per that decision, Craig continues to maintain one outstanding claim
against the Buermanns for breach of an oral contract to return Craig's nonrefundable earnest
money (Dkt. 85 at 18-19).

and the seller, Silvercreek Realty acted as a limited dual agent (*id.* at ¶¶ 18, 70, *id.* at Ex. A at ¶ 35).

The Purchase Agreement provided that Craig would purchase the Midvale Ranch for $3,300,000; Craig would pay $115,000 in earnest money; the earnest money would be held by the closing company; the earnest money would be credited to Craig upon closing; the sale was contingent on Craig obtaining $1,800,000 in financing; and the earnest money would be returned to Craig if he was unable to obtain financing after exercising good faith efforts (*id.* at ¶ 20). Craig refers to this latter provision for the return of the earnest money if he failed to obtain financing as "the financing contingency" (*id.* at ¶ 21).

On the same date that the parties entered into the Purchase Agreement, they also entered into Addendum #1 to that Agreement, providing that after either thirty days or an appraisal, Craig would release $25,000 of the earnest money to the Buermanns "as non refundable" (*id.* at 23; *see also id.* at Ex. B). This nonrefundable earnest money related to "a plan" the parties "devised" "whereby Craig's earnest money would be used to fund [the Buermanns'] purchase of a home located [in Sweet, Idaho] where [they] intended to retire upon the sale of the Midvale Ranch" (the Sweet Property) (*id.* at ¶¶ 18, 24) (alleging $25,000 in nonrefundable earnest money released to fund purchase of Sweet Property to allow Buermanns to "transition off the Midvale Ranch"). Later, in Addendum #3 to the Purchase Agreement, Craig agreed this $25,000 nonrefundable earnest money would be released to the Buermanns by June 17, 2019, which it was (*id.* at ¶¶ 26, 28; *see also* Ex. D).

Because Craig was struggling to obtain financing, Addendum #3 also extended the closing date from July 8 until August 12, 2019 (*id.* at ¶ 30; *see also* Ex. D). By mid-July, however, Craig

continued to struggle to obtain financing, and Naylor told him another buyer was interested in purchasing the Midvale Ranch (*id.* at ¶ 30). At that point, Naylor and Craig began discussing a means "to keep the deal alive given the interest of the other rancher"; Naylor asked Craig how much more earnest money he could pay; and "Craig told her he could probably manage to deposit as much as $800,000 in earnest money," which he understood was the amount the Buermanns "needed to buy the Sweet Property" (*id.*).

Thereafter, on August 12, 2019, the parties entered into Addendum #4 to the Purchase Agreement extending the closing date again until October 31, 2019 (*id.* at ¶ 31; *see also id.* at Ex. E). Additionally, Craig agreed to increase the earnest money by $682,000. Regarding this earnest money, Addendum #4 provides "E-money to be deposited at Pioneer Title Company and then released to seller as **non-refundable** e-money on or before August 16, 2019. All e-moneys deposited by the buyer to be credited to buyer at closing towards purchase" (*id.* at Ex. E) (emphasis added). As Craig explains, this "additional earnest money payment was designated 'non-refundable' in Addendum [#]4 to allow [the Buermanns] to close on the Sweet Property" (*id.* at ¶ 31). In accordance with Addendum #4, Craig wired $682,000 to Pioneer Title Company (*id.*).

Ultimately, Craig was unable to obtain the financing necessary to purchase the Midvale Ranch. By October 31, 2019—the date the closing was to occur—"Craig had, in good faith, exhausted his existing efforts to finance the transaction and determined he was unable to buy the Midvale Ranch on the terms specified in the Purchase Agreement" (*id.* at ¶ 35). As a result, the Purchase Agreement expired (*id.* at ¶ 36).

In total, the Buermanns retained $707,000 ($25,000 plus $682,000) in earnest money, which had been designated nonrefundable (*id.* at ¶ 40). When Craig asked for the return of his

earnest money, he alleges Naylor "falsely represented the money had already been released" (*id.* at ¶ 38). However, "[a]n audit conducted the following year led to Silvercreek Realty 'finding' . . . $90,000 at Pioneer Title Company"; Baker advised these funds should be returned to Craig; and on October 21, 2020, this amount was returned to Craig (*id.*).

The remainder of the nonrefundable earnest money was not returned, however. For several months, Craig and the Buermanns communicated about the Buermanns returning at least a portion of the earnest money (Dkt. 83 at 4-5). They quit communicating with him, however, when they received a letter from counsel advising them they did not have to return the earnest money (*id.* at 5).

In March 2022, Craig filed a complaint against Silver Sage Ranch and the Buermanns (Dkt. 1). Following the completion of discovery, Craig sought leave to file an amended complaint to add Naylor and Silvercreek Realty as defendants (Dkts. 39, 43). The magistrate judge granted that motion, and Craig filed his amended complaint (Dkts. 52, 54). As against Naylor and Silvercreek Realty, the amended complaint alleged claims for negligence, negligent supervision, and breach of contract (Dkt. 54 at ¶¶ 88-104).

Naylor and Silvercreek Realty moved to dismiss these claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim (Dkt. 62). On March 25, the case was reassigned from the magistrate judge to this Chambers (Dkt. 73). After a hearing, the Court granted this motion to dismiss but also allowed Craig leave to amend (Dkt. 82). On September 20, 2024, Craig filed a second amended complaint against Naylor and Silvercreek Realty, asserting claims of negligence and negligent supervision, and he added Deacon as a defendant for the first time

(Dkt. 85). Deacon, Naylor, and Silvercreek Realty (collectively the Silvercreek Defendants) move under Rule 12(b)(6) to dismiss Craig's second amended complaint.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a motion to dismiss for failure to state a claim on which relief can be granted tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In assessing dismissal of claims under Rule 12(b)(6), the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

A dismissal under Rule 12(b)(6) is appropriate where a complaint "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a short and plain statement of the claim, showing the pleader is entitled to relief and giving the defendant fair notice of what the claim is and the grounds on which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it requires "more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a Rule 12(b)(6) motion, a plaintiff's allegations must provide enough factual basis which, taken as true, state a plausible claim for relief. *Twombly*, 550 U.S. at 556. A claim has facial plausibility when the plaintiff pleads factual content allowing the court to draw a reasonable inference the defendant is liable for the alleged misconduct. *Id.* The plausibility standard is not akin to a "probability requirement" and requires more than a mere possibility a

**MEMORANDUM DECISION AND ORDER RE MOTION TO DISMISS - 6**

defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

## III. ANALYSIS

In the Court's prior decision dismissing Craig's negligence claims against Naylor and Silvercreek Realty, the Court noted that the economic loss rule generally prohibits recovery of purely economic losses in a negligence action; the existence of a special relationship may provide an exception to the economic loss rule; the Idaho Supreme Court, however, has not yet definitively resolved whether a special relationship may exist between a buyer and his real estate agent; and as a result, it was unclear under Idaho law whether the economic loss rule prohibits Craig's recovery of purely economic loss in this case (Dkt. 82 at 5-11). The parties continue to dispute whether a special relationship exists between Craig and the Silvercreek Defendants (*Compare* Dkt. 91-1 at 4-10 *with* Dkt. 96 at 13-18). Regardless, even if the Court were to assume that the economic loss rule does not bar Craig's negligence claims, the Court concludes Craig's second amended complaint fails to state a viable claim relief against the Silvercreek Defendants.

### A.     Negligence

Craig's second amended complaint is lengthy. In support of his negligence claim against the Silvercreek Defendants, however, Craig summarizes his negligence allegations as follows:

> The Silvercreek Defendants breached the standard of care owed to Craig by, among other things, [1] failing to account in Addendum [#]4 for a return of Craig's earnest money in the event he could not close on the Midvale Ranch purchase; [2] allowing the Purchase Agreement and its amendments to expire rather than terminating it based on the financing contingency having not been met; [3] failing to negotiate for the best interest of their client by allowing such a large amount of earnest money be deemed "non-refundable" in the absence of concrete

financing from Craig; [4] failing to protect Craig's best interest by elevating their needs for a commission and keeping Craig "under contract" ahead of protecting Craig in the event the sale of Midvale Ranch did not close; [5] failing to properly account for Craig's money, specifically the $90,000 earnest money deposit that was discovered a year later by Pioneer Title in an audit and falsely representing its status to Craig; [and 6] allowing the seller's agent (Dave Anderson) to draft the contracts without regard for the effect of their terms on Craig.

(Dkt. 85 at ¶ 55). Additionally, Craig argues in opposition to the Silvercreek Defendants' motion to dismiss that "Naylor's inexperience precluded her from exercising reasonable skill and care" (Dkt. 96 at 10).

### 1.  Failure to Account for $90,000

As Craig acknowledges, Idaho Code § 54-2087 establishes the statutory duties a brokerage and its licensees owe a client (Dkt. 85 at ¶ 54). Addressing Craig's allegations is challenging, however, because most of them do not fit squarely within the duties § 54-2087 identifies. The one exception is Craig's allegation that the Silvercreek Defendants failed to account for $90,000 in earnest money, which was eventually returned to Craig.

Section 54-2087(5) provides a brokerage and its licensees owe a client a duty "to properly account for moneys . . . in the care and responsibility of the brokerage pursuant to [§] 54-2041." In turn, § 54-2041 provides that a broker "shall be responsible" for all money "entrusted" to that broker (or its licensee) but that money "shall not be considered entrusted" to the broker if the parties have instructed the broker in writing to transfer the money to a third party, such as a title company. I.C. § 54-2041(1). In this case, the Purchase Agreement expressly provides that the earnest money is to be held by the "closing company," including the $682,000 in earnest money designated as non-refundable; the closing company was Pioneer Title Company; Craig wired the earnest money to Pioneer Title Company; and it found the $90,000 in unrefunded, unreleased

earnest money (Dkt. 85 at Ex. A at ¶¶ 3, 9(B) and Ex. E; *id.* at ¶¶ 31, 38, 55). Based on these allegations, Craig never "entrusted" any of the Silvercreek Defendants with the earnest money because the Purchase Agreement instructed that Pioneer Title Company would hold the earnest money, and Craig wired that money directly to Pioneer Title Company. As a result, the Silvercreek Defendants did not have a duty to account for the money under § 54-2087(5).

Attempting to avoid this result, Craig notes § 54-2041(1) indicates a broker is relieved of responsibility for money entrusted to a third party only if the broker has "no right to exercise control over" the money's disposition. Relying on this language, Craig argues that because the Silvercreek Defendants "arrange[d] for the disposition of the earnest money," "they clearly [had] the right to exercise control over the disposition of the money" (Dkt. 96 at 8). Craig, however, never alleged the Silvercreek Defendants maintained control over the earnest money. Further, he did not allege they maintained the right to the money's disposition. Rather, he alleged Pioneer Title Company released the $90,000 to him because "Baker advised [it] should be returned to Craig consistent with the parties' agreement on earnest money" (Dkt. 85 at ¶ 38). Accordingly, Craig's allegations that the Silver Creek Defendants failed to account for the $90,000 fails to state a viable claim for relief.

### 2. Failure to Anticipate Craig's Inability to Obtain Financing

Several of Craig's allegations suggest the Silvercreek Defendants should have anticipated his failure to obtain the necessary financing to close on the Midvale Ranch and protected him against the consequences of that failure. For example, Craig alleges that the Silvercreek Defendants "fail[ed] to account in Addendum [#]4 for a return of [his] earnest money" if Craig did not obtain financing to close the purchase and that they failed to protect his best interests "by

allowing such a large amount of earnest money [to] be deemed 'non-refundable' in the absence of concrete financing" (Dkt. 85 at ¶ 55). These allegations suggest the Silvercreek Defendants should have had a more thorough understanding of Craig's finances and anticipated his inability to obtain financing.

Craig, however, never alleges he shared the specifics of his finances or financial dealings with any of the Silvercreek Defendants. At most, Craig alleges Naylor recommended a potential lender (*id.* at ¶ 29). Regardless, the Silvercreek Defendants neither had a duty to investigate the adequacy of Craig's finances to complete the transaction nor to give Craig professional advice about financing. *See* I.C. § 54-2087(4)(d) (indicating no duty to give professional advice); *id.* at § 54-2087(7) (stating "no duty to conduct an independent investigation of either party's financial ability to complete a real estate transaction"). Specifically, the Silvercreek Defendants did not have a duty to advise Craig about his finances or to protect him against his failure to obtain financing, and Craig's allegations that they breached such a purported duty fail to state a claim for relief.

### 3. Failure to Exercise Reasonable Care

Craig's remaining negligence allegations likewise fail to state a claim for relief. Although realtors owe their clients a general duty of reasonable care, *see* I.C. 54-2087(2) (stating duty "[t]o exercise reasonable skill and care"), Craig's remaining allegations contain insufficient factual content to allow the Court to draw a reasonable inference that the Silvercreek Defendants are plausibly liable for an alleged breach of that duty or any other misconduct. *See Twombly*, 550 U.S. at 556 (noting claim has facial plausibility only if plaintiff pleads factual content to allow reasonable inference of liability).

For example, Craig alleges the Silvercreek Defendants "fail[ed] to protect [his] best interests by elevating their need for a commission . . . ahead of protecting [him] in the event the sale of Midvale Ranch did not close" (Dkt. 85 at ¶ 55). The only allegation Craig offers in support of this assertion is that "Naylor represented that her job was to 'keep him under contract'" (*id.* at ¶ 30). This allegation, however, does not translate into Naylor placing the Silvercreek Defendants' interest in earning a commission above Craig's interest in purchasing the property and is insufficient to infer such a conclusion.

Also, Craig's bare bones allegations that the Silvercreek Defendants breached a standard of care by "allowing the seller's agent, Anderson, to draft the contracts without regard for the effect of their terms on Craig" (*id.* at ¶ 55) fails to state a claim for relief. In every transaction, one party must draft the documentation. To conclude a party's representative breached a standard of reasonable care simply by allowing the other party to draft the contract would be a significant expansion of that duty, resulting in a breach in all disputed transactions. Craig cites no authority for construing the duty so broadly. Moreover, Silvercreek was acting under a limited dual agency because both Naylor and Anderson were its affiliated realtors (*id.* at Ex. A, ¶ 35) (noting limited dual agency). To the extent Craig's allegations suggest Silvercreek breached a duty of loyalty by allowing the Buermanns' realtor to draft the documents, the limited dual agency does not impose a duty of undivided loyalty. *See* I.C. § 54-2088(4)(b) (providing limited dual agency does not have duty of undivided loyalty to either buyer or seller).

Similarly, the law does not support the conclusion that a real estate agent's inexperience alone necessarily equates to a breach of the standard of care. Craig does not provide any authority to the contrary and simply argues that "Naylor's inexperience precluded her from exercising

reasonable skill and care" (Dkt. 96 at 10). Absent some specific conduct beyond a lack of experience, however, the Court cannot reasonably infer Naylor breached the duty of care by not having previously handled a "complex" real estate transaction. Craig's broad, general allegations that Naylor demonstrated "carelessness," lacked "attention to detail," did not advise him about "pitfalls," and failed to advance an alternative approach to allowing Craig to complete the transaction despite his inability to obtain financing do not provide a sufficient factual basis to reasonably infer Naylor or the other Silvercreek Defendants plausibly breached of the standard of care because Naylor was purportedly inexperienced.

Finally, Craig's allegation that the Silvercreek Defendants breached a duty of reasonable care by "allowing the Purchase Agreement to expire rather than terminating it based on the financing contingency" does not state a claim for relief. Craig premises this theory of liability on the suggestion that the nonrefundable nature of the earnest money, as stated in Addendum #4, did not have an impact on the financing contingency in the Purchase Agreement. He notes that the Court has not "made any ruling about how, if at all, Addendum [#]4 altered the financing contingency" (*id.* at 9).

The plain language of Addendum #4, however, unambiguously answers the question of how the earnest money's nonrefundable nature affects the financing contingency. The financing contingency provides that if Craig is unable "to obtain the indicated financing," his earnest money "shall be returned" (Dkt. 85 at Ex. A, ¶ 3). Contrary to the financing contingency, Addendum #4 provides the $682,000 in earnest money is nonrefundable (*id.* at Ex. E). As the Court previously noted, the only reasonable interpretation of the term "nonrefundable" is the money will not be returned, meaning if Craig failed to close on the transaction, the money would not be refunded as

stated in the financing contingency (*see* Dkt. 83 at 23) (citing *River Range, LLC v. Citadel Storage, LLC*, 462 P.3d 120, 127 (Idaho 2020) (concluding "there is only one reasonable interpretation" of the word "nonrefundable").

Obviously, the financing contingency directly conflicts with Addendum #4. Addendum #4, however, addresses this conflict. Specifically, it provides (immediately above Craig's signature) that:

> **To the extent the terms of this ADDENDUM modify or conflict with any provision of the Purchase and Sale Agreement including all prior Addendums or Counter Offers, these terms shall control.** All other terms of the Purchase and Sale Agreement including all prior Addendum and Counter Offers not modified by this ADDENDUM shall remain the same. Upon its execution by both parties, this agreement is made an integral part of the aforementioned agreement.

(Dkt. 85 at Ex. E) (emphasis added). Based on this unambiguous language, the nonrefundable nature of the earnest money, as stated in Addendum #4, modifies the financing contingency and controls.[3] For that reason, attempting to terminate the Purchase Agreement to trigger the financing contingency—as Craig asserts the Silvercreek Defendants should have done—would have been futile. Craig could not avoid Addendum #4 by terminating the Purchase Agreement. Accordingly, Craig's allegations that the Silvercreek Defendants breached the standard of care by not terminating the Purchase Agreement in lieu of letting it expire fail to state a claim for relief.

Moreover, many of Craig's other allegations acknowledge he understood the reason the earnest money was nonrefundable. For example, Craig acknowledges he understood that the

---

[3]    The addenda providing for $25,000 in nonrefundable earnest money also contain this same provision (Dkt. 85 at Exs. B, D).

Buermanns intended to purchase the Sweet Property with the nonrefundable earnest money; $800,000 was the amount [the Buermanns] needed to buy the Sweet Property"; $25,000 in nonrefundable earnest money was released on June 17, 2019, for this purpose; Addendum #4 designated the additional $682,000 of earnest money as nonrefundable "to allow [the Buermanns] to close on the Sweet Property"; and the $682,000 was to be released "on or before August 16, 2019" (several weeks before the October 31 closing for the Midvale Ranch) so the Buermanns could purchase the Sweet Property (*id.* at ¶¶ 18, 24, 26, 30-31; *id.* at Exs. D, E). Based on these facts, Craig knew or should have known that if he did not obtain financing by October 31 to close on the Midvale Ranch, the Buermanns would no longer have the earnest money on hand to return to him.

### B.    Negligent Supervision

Craig alleges negligent supervision against both Deacon and Silvercreek. In support, he relies on I.C. § 54-2038, which outlines the general responsibilities of the designated broker—Deacon in this case. Craig avers "Deacon failed to properly supervise Naylor's work for Craig" (Dkt. 85 at 24). Challenging this claim, the Silvercreek Defendants argue that § 54-2038 only imposes a duty on Deacon, not Silvercreek, to supervise Naylor; Craig cites no authority that Silvercreek had a duty to supervise Naylor; he fails to allege facts regarding how Deacon's actions were inconsistent with her duties under § 54-2038; and the claim fails for the same reasons Craig's negligence claim fails.

On reply, Craig argues that Silvercreek Realty's argument that it did not have a duty to supervise Naylor is "preposterous"; Silvercreek Realty is vicariously and jointly and severally liable for Deacon's acts and omissions; and he "alleged in detail how Deacon breached her duties

under [§ 54-2038]" (Dkt. 96 at 13). In support, Craig cites paragraph 68 of his second amended complaint. That paragraph, however, only explains the relationships between Naylor, Deacon, and Silvercreek Realty and does not allege any conduct related to a lack of supervision (*see* Dkt. 85 at ¶ 68).

Craig does generally allege in paragraph 55 of his second amended complaint that "Deacon failed to exercise proper supervision of Naylor, who had no prior experience selling such large commercial properties" (*id.* at ¶ 55). Like Craig's allegations that the Silvercreek Defendants are negligent because they breached their duty of reasonable care, this general, broad allegation that Deacon failed to properly supervisor Naylor contains insufficient factual content to allow the Court to draw a reasonable inference that either Deacon or Silvercreek Realty are plausibly liable for failing to supervise Naylor. *See Twombly*, 550 U.S. at 556 (noting claim has facial plausibility only if plaintiff pleads factual content to allow reasonable inference of liability). Accordingly, Craig has failed to state a negligent supervision claim.

Because Craig has failed to state viable claims for relief, the Court need not address whether the statute of limitation bars the claims. Additionally, the Court declines to grant Craig leave to amend his complaint again. To date, Craig has been unable to assert viable claims against the Silvercreek Defendants, even though the parties have already engaged in substantial discovery in this case. Given the factual record, the Court finds it would be futile for Craig to file another amended complaint against the Silvercreek Defendants. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (ruling court may deny leave to amend where amendment would be futile); *Gardner v. Martino*, 563 F.3d 981, 991-92 (9th Cir. 2009) (noting amendment is futile where plaintiff cannot

offer new set of facts or legal theories to state cognizable claim); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (ruling futility alone is grounds to deny leave to amend).

## IV. ORDER

IT IS ORDERED that:

1.    Defendants Burma Naylor, Krista Deacon, and Silvercreek Realty Group, LLC's Second Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (Dkt. 91) is **GRANTED**.

2.    The hearing on this matter scheduled for July 30, 2025, at 9:30 a.m. is **VACATED**.

DATED: June 23, 2025

Amanda K. Brailsford
U.S. District Court Judge